JUDGE PETERS
delivered the opinion on the court.
It is alleged in the petition, in substance, that appellee’s intestate, in December, 1869, sold to appellant and Newcomb, partners doing business under the firm-name of Newcomb & Sousely, one hundred well-fatted and merchantable hogs — no hog to weigh less than two hundred pounds, and the whole number to average three hundred pounds each — to be delivered between the 10th and 20th days of November, 1870, and for which the defendants promised and agreed to pay intestate in cash eight dollars per hundred, gross weight; and that the vendor had in the town of Elizaville, in Fleming County, a convenient locality, from the 10th to the 20th of November, 1870, *89 inclusive, one hundred well-fatted and merchantable hogs, no one of which weighed less than two hundred and thirty pounds gross, and the one hundred hogs averaged three hundred and thirty-six pounds and a fraction gross each, of which facts, and the readiness and willingness of the vendor to deliver said hogs in accordance with the contract aforesaid, the vendees had notice. It is further alleged that the vendor was ready with said hogs to comply with his contract from the 10th of November, 1870, to the 20th of the same month, including both and each intervening day, of which the vendees had due notice; but that they, although so notified and requested to receive and pay for said hogs according to the terms of the contract aforesaid, failed and refused to do so, to the damage of the plaintiff eight hundred dollars, and for which he prayed judgment.
The appellants answered severally, and denied that they made any contract for the purchase of hogs, such as is set out in the petition, as partners, or that either of them made the contract for the purchase of the hogs on their individual account, and each of them denied having made any contract whatever with the intestate for hogs. Besides the denial of the making any contract for the purchase of hogs from the intestate, New-comb entered into an explanation of the character of partnership subsequently formed between Sousely and himself, which is mere narrative, presents no issue, and will not further be noticed.
On the trial a verdict and judgment were rendered in favor of appellee against Sousely for eight hundred dollars; and his motion for a new trial having been overruled, he has appealed to this court.
From the foregoing statement of the pleadings it will be seen that the issue presented involved the inquiry whether there had been a contract between the parties, and none as to the acts or omissions of the parties under it. The petition therefore can derive no aid from the answer or verdict; and *90 if it fails to state a cause of action, judgment should have been rendered for appellants.
No place was fixed by the terms of the contract at which the hogs were to be delivered, or at least it is not alleged in the petition that the place of delivery was designated in the contract of sale; and in the absence of an agreement by the parties on the place of delivery it is well settled that where the articles sold are cumbersome the law fixes the residence of the vendor as the place of performance. This was recognized as the rule of law governing such contracts as early as 1802 by this court; and in 1811, after a review of the authorities in the case of Wilmouth v. Patton (2 Bibb, 280), this court re-affirmed the doctrine as being consonant with the principles of justice and the implied understanding of the parties; and in the much latter case of Chandler v. Robertson (9 Dana, 291) the principle is recognized as the settled rule of construction of such contracts. A different rule could not be adopted without giving to one of the parties the power to appoint the place of performance, which would place it at his option at all times to comply or not. If the contract were beneficial to him, he would appoizzt a place convenient to the other party ; but if it should be disadvantageous to hizn, he would fix the place of pei’fozzmance so remote or incozzvenient to the other party as to make it more to his interest to abandon than to attempt to enforce it. Besides, the .rule has been so long adopted, that courts mzzst regard contracts for the delivery of cumbrous property, where the place of delivery is not expressed as having been made with the understanding by the parties, that the residence of the vendor is the place of performance fixed by law.
In cases of this character, where the agreements are mutual and dependent, and each party is to perform his part at the same time, neither can maintaizz an action without averring a readiness to perform his part of the agreement; hence the *91 sufficiency of the petition must depend upon the sufficiency of the averment of a readiness and willingness to perform by the plaintiff his part of the contract. If appellant had made the contract, and intended to comply with it, as he had the option as to the day between the 10th and 20th days of November, 1870, on which he would receive the hogs, it was his duty to have given his vendor reasonable notice on which of the days he would receive them. His failure to do that fixed the last day as the one on which the hogs should be delivered, and gave to the vendor the unconditional right to require of his vendee to perform his contract on that day. If then he was not bound to be ready to deliver the hogs on each and every day between the days prescribed, he was bound to be ready at his own residence on the last-named day; and to enable him to maintain an action on the contract he should have averred a readiness and willingness on his part to deliver the one hundred head of hogs of the description designated in the contract at his residence on the 20th of November, 1870, and that appellant failed to attend to receive them. (Chandler v. Robertson, 9 Dana, 291.)
If he desired to deliver them at a different place, he could have notified appellant of that desire; and if he had assented to the change, they then might have been delivered at such place; but without such notification and assent he could not have changed the place.
It seems to us therefore that no cause of action is set forth in the petition, and a new trial should have been awarded.
Wherefore the judgment is reversed, and the cause is remanded with directions to award a new trial, to allow plaintiff below to amend his petition, if he should apply to do so in reasonable time, and for further proceedings consistent herewith.